IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| JOHN MICHAEL TRAUE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-18-374-SM |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

John Michael Traue (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's final decision he was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 3, 11.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court reverses the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

**C. Relevant findings.**

**1. Administrative Law Judge's findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met his burden of proof. AR 16-28; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

(1) did not engage in substantial gainful activity during the period from his alleged onset date of September 3, 2010 through his date last insured of December 31, 2015;

(2) had the following severe impairments: migraine headaches, obesity, depressive disorder, and anxiety disorder;

(3) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with additional limitations;

(5) could not perform his past relevant work;

(6) could perform jobs that exist in significant numbers in the national economy such as assembler, document preparer, and hand packer; and so,

(7) had not been under a disability, as defined in the Social Security Act, from September 3, 2010 through December 31, 2015.

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

AR 16-28.

### 2. Appeals Council's action.

The Social Security Administration's (SSA) Appeals Council reviewed Plaintiff's request for review and his brief and determined his arguments provided no basis for changing the ALJ's decision. *Id.* at 1-6. The ALJ's decision is thus the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court "cannot reweigh the evidence or substitute [its] judgment for that of the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v.*

*Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

### B. Plaintiff's claims of error.

Plaintiff argues the ALJ committed legal error when she incorrectly weighed Plaintiff's subjective complaints when assessing his credibility. Doc. 17, at 7-16. Specifically, Plaintiff argues the ALJ (1) drew improper inferences from Plaintiff's noncompliance with medication therapy; (2) mischaracterized the evidentiary record to support her findings; (3) improperly relied on Plaintiff's daily activities; (4) improperly evaluated Plaintiff's character; and (5) based her rejection of Plaintiff's credibility solely on the objective evidence. *See id.* Plaintiff argues that because of this legal error, "the ALJ's conclusion regarding [Plaintiff's] complaints is not entitled to the usual deference reviewing courts provide such determinations." *Id.* at 16. Plaintiff's claim of error requires a remand.

5

### C. Plaintiff's testimony.

Plaintiff testified he travels from Midwest City to Oklahoma City to see doctors and to travel to Variety Care. AR 49. He drives one or two times per week and is a passenger about once a week. *Id.* at 49-50. He participated in a mission trip in either 2010 or 2011. *Id.* at 52. The trip was for a week, but Plaintiff stayed only two days "because [he] couldn't be around people that long." *Id.* at 53. He testified he has between fourteen and sixteen migraines per month that usually last between five to twelve hours, with the longest lasting seventy-two hours. *Id.* at 54.

Plaintiff thinks of suicide "once, twice, maybe three times a week" when his depression is "not as bad." *Id.* at 56. When the depression is bad, he thinks of it daily, and has "thought of multiple ways to execute it," admitting he knows where a shotgun and knifes are, and that he knows "where a hose is to hook to [his] car," and he knows "where rope is." *Id.*; *see also id.* at 661 (Nov. 2015 progress notes indicate continued "S/I," but no plans to execute, and discussion of safety plan in place.); *id.* at 665 (March 2016 progress notes indicate goal to "[b]e free of suicidal thoughts or attempts," and reports his "S/I is less frequent."); *id.* at 668 (April 2016 progress notes indicate continuing "S/I" and noting progress was "slight.").

Plaintiff testified he typically stays in his room. *Id.* at 58. If his mother cannot go to the grocery store for him, he will venture out in the middle of the

night, "like 3:00 in the morning" for a quick trip to places like Walmart to avoid people. *Id.* at 58-59. He tries to help his mom with chores. *Id.* at 59. His migraine medication makes him "non-functional for several days, or it won't have any effect whatsoever." *Id.* at 60. Plaintiff testified his doctor instructed him to only take the medication in the evenings. *Id.*

### D. Whether the ALJ erred in assessing Plaintiff's subjective complaints.

#### 1. Legal standards.

Ruling 16-3p articulates a two-step process for evaluating a claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines "whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id.* The ALJ "will not find an individual disabled based on alleged symptoms alone." *Id.*

Second, the ALJ "evaluate[s] the intensity and persistence of an individual's symptoms . . . and determine[s] the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id.* In evaluating the intensity and persistence of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence." *Id.* The ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her

symptoms are consistent with the medical signs and laboratory findings of record."[3] *Id.*

As part of that analysis, the ALJ assesses: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain and other symptoms; (5) other treatment the claimant receives or has received for relief from pain and other symptoms; (6) "any measures" the claimant uses or has used to relieve pain and other symptoms; and (7) "other factors" concerning the claimant's functional

---

[3] The Social Security Administration's regulations also require such a comparison:

> [W]e will evaluate your statements in relation to the objective medical evidence and other evidence . . . . We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

20 C.F.R. § 404.1529(c)(4) (emphasis added).

8

limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 404.1529(c)(3).

Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted). A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004) (*quoting* SSR 96-7p, 1996 WL 374186, at *4 (*superseded by* SSR 16-3p, 2016 WL 1119029 (effective Mar. 16, 2016)).[4]

### 2. The ALJ's assessment of Plaintiff's subjective complaints and application of SSR 16-3p.

The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged, his allegations regarding the severity of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 24. After listing SSR 16-3p's seven factors she must consider, the ALJ concluded Plaintiff

---

[4] The standard for evaluating credibility, as noted above, has since been superseded by Soc. Sec. Rul. 16-3p, 2016 WL 1119029. Regardless of which standard is applied, the ALJ's credibility determination fell below these standards.

9

> obtains medical treatment and takes medication for his impairments. However, he admits improvement in his migraines, depression, and anxiety with treatment and exhibits adequate functioning to work above the SGA level during examinations. Doctors generally note [Plaintiff] appears depressed and/or anxious, but otherwise reported wholly normal exam findings. [Plaintiff] reports limited activities of daily living, but acknowledges he does light housework, prepares simple meals occasionally, checks the mail, watches TV, plays games on a computer, cares for pets, mows the lawn, does laundry, drives, and shops in stores. [Plaintiff] wrote his hobbies and interests, which he does less often than in the past, include "Sports, computers, movies, reading, video games, spending time with friends" (Exhibit 4E/5). He also texts with others. The claimant told clinicians he house sat for his sister in 2015 and 2016. He noted playing with his dog, indicating more activity and greater abilities than alleged. The claimant only worked above the SGA level in 2008, 2009, and 2010. He has not even tried to work since 2010 (Exhibit 8D).

*Id.* at 23-24. The ALJ also gave "great weight" to the findings of the State agency psychological consultants, who opined that Plaintiff's affective disorder and anxiety related disorder result in "moderate restrictions" in his activities of daily living. *Id.* at 25-26.

### 3. The ALJ's inferences regarding Plaintiff's noncompliance with medication therapy.

Plaintiff argues the ALJ made improper inferences regarding his noncompliance with medication therapy and overlooked record evidence of the medications' ineffectiveness and side effects. Doc. 17, at 10-12. The ALJ concluded that Plaintiff's "noncompliance likely contributed to his mental health problems." *Id.* at 22 (citing *id.* at 540). The ALJ doubted the veracity

of Plaintiff's side-effect complaints, noting the inconsistency of some statements where Plaintiff noted improvement with medication, AR 20 (noting "Imitrex nasal spray helped" and migraine relief with Topomax) and treatment.

As Plaintiff points out, this reference minimizes if not overlooks the other evidence of reported side effects, his inability to afford medications, and the medications' reported ineffectiveness. *See, e.g., id.* at 60 (migraine medication either leaves him "non-functional for several days" or has no effect), 258 (Plaintiff states he "[w]as unable to figure what meds would work and have managable side effects."), 533 (Plaintiff "stopped [taking medication] because [medication] was not effective."), 645 (cannot afford migraine medication that helped "a little bit"), and 655 (reported medications made Plaintiff feel like he was "in a 'fog.'")).

The ALJ also doubted Plaintiff's veracity as to his financial situation and ability to afford medications, noting Plaintiff "admitted he received income of approximately $200 per month from a small oil claim." *Id.* at 22 (citing *id.* at 608). Plaintiff indicated his lack of insurance for several years made acquiring medications impossible. *Id.* at 258; *see also id.* at 670 (May 2016 progress notes indicate the onset of a migraine from anxiety over unpaid medical bill). Plaintiff lives with his parents, who provide his living expenses, and who accompany him to most medical visits. The record indicates Plaintiff's Axis IV

assessment included "[e]conomic problems," "[p]roblems with access to health care services," "[h]ousing problems," and "[o]ccupational problems." *Id.* at 608; *see also id.* at 576 (April 3, 2015 HOPE Community Services records stating Plaintiff "has all needs met by his parents at this time, depends on them for financial support.").

### 4. The ALJ's characterization of the record.

Plaintiff challenges the ALJ's characterization of the record, especially his response to treatment and her assessment of his daily activities. Doc. 17, at 12-16. As Plaintiff notes, the ALJ stated, without citation to the medical record, that "[r]ecords from HOPE [Community Services] show that [Plaintiff] functions adequately with treatment to work above the SGA level." AR 22, *see* Doc. 17, at 12. However, the ALJ did not mention Plaintiff's July 2016 depression screening evidencing "severe depression." Doc. 17, at 12 (citing AR 629). The ALJ did not mention this screening, despite reviewing the balance of medical records from the same provider. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence . . . ."). The ALJ had also earlier noted—without qualification—that although Plaintiff first developed migraines in 2009, "he continued to work above the SGA level." AR 19; *see* Doc. 17, at 13, 12.

In considering Plaintiff's activities of daily living, the ALJ pointed to Plaintiff's housesitting, visiting his father in the hospital, and playing with his

dog, as "indicating more activity and greater abilities than alleged." AR 24. In doing so, however, the ALJ overlooked evidence showing how Plaintiff's impairments affect his ability to carry out these activities.

First, while Plaintiff did visit his father in the hospital, he did so "despite his anxiety," and "went to see his dad at the hospital for his mom's sake and even though he felt anxious he went and stayed about 45 minutes." AR 20, 604.

Second, the Commissioner emphasizes Plaintiff spent time playing with his dog. Doc. 23, at 10. However, as the ALJ noted, in battling migraines and his suicidal ideation, Plaintiff has been focusing on mindfulness, cognitive behavioral therapy, and coping skills. AR 23, 665, 657. Relatedly, Plaintiff reported he was playing with his dog "[a]s suggested by his neurologist" to mitigate his depression. *Id.* at 665, 20.

Third, the Commissioner argues Plaintiff's housesitting activities undermined his credibility. Doc. 23, at 10-11. Plaintiff, however, reported he was anxious he might have a migraine, which would preclude his ability to travel between the different homes to feed the dogs as required. AR 661.

Fourth, the Commissioner also notes that Plaintiff "admitted he went to a summertime camp on a mission trip with his church." Doc. 23, at 10. However, as previously noted, Plaintiff only managed to stay two days, rather than the camp's week duration. AR 53.

Lastly, while Plaintiff admits he drives, stating the places he goes on a regular basis are the HOPE Community Center and fast-food places, *see, e.g., id.* at 255, 263, 264, 293, & 294, Plaintiff's testimony and other statements in the record indicate that his ability to complete these tasks is severely limited by his disability.

The ALJ's statement that "[d]octors generally note that [Plaintiff] appears depressed and/or anxious, but otherwise report wholly normal exam findings" overstates the record. AR 23. The ALJ agrees Plaintiff has the severe impairments of both depressive and anxiety disorders. *Id.* at 16. The Commissioner argues the ALJ's statement that Plaintiff "has not even tried to work since 2010" was just part of her summary of Plaintiff's work history. Doc. 23, at 12. But this does not square with the ALJ's unqualified statements about Plaintiff's ability to work above the SGA level, which the ALJ concluded after noting Plaintiff's noncompliance. AR 22; *see supra* § III.C.3.

The ALJ also summarily stated that Plaintiff's statements were not fully supported because "[t]reatment notes in the record fail to support [his] allegations of disabling limitations." *Id.* at 26. Rather than providing medical record support, the ALJ pointed to the state agency psychological opinions.

SSR 16-3p emphasizes the insufficiency of conclusory statements and recitations of factors and instructs how the "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with

and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2016 WL 1119029, at *9.

The undersigned disagrees with the Commissioner that the RFC imposed adequate nonexertional limitations that were consistent with the record evidence, *see* Doc. 23, at 13, and concludes substantial evidence does not support the RFC. In sum, "the ALJ relied on an incomplete account of [Plaintiff's] testimony and other statements regarding his ability to perform certain activities of daily living." *Racette v. Berryhill*, No. 17-2130, 2018 WL 2318089, at *4 (10th Cir. May 22, 2018) (internal quotation marks omitted).

### III. Conclusion.

The court REVERSE and REMANDS the Commissioner's decision.

ENTERED this 6th day of December, 2018.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE